No. 37,496

J. H. Wilson, *Appellant*, v. Pum Ze, Mah-Che-Jwn, T. J. Say-
ward, S. W. Winter, J. W. Sturns, A. Franklin, James T. Han-
skins, Sen Greed, Julia A. Wait, Julia McBrier, Edith Dick-
son, Hyda McBrier, Alphonse McBrier, Martha McBrier
Carroll, Jenner McBrier, Amherst McBrier (together with
the unknown spouses of such persons as may be married, if the
said named and described persons are living, and/or if they or any
of them be dead, then their respective unknown heirs, executors,
administrators, devisees, trustees, and assigns), *Appellees.*

(204 P. 2d 723)

Opinion filed
April 9, 1949.

*Elisha Scott* and *Charles S. Scott,* both of Topeka, argued the cause, and
*John J. Scott,* of Topeka, was with them on the briefs for the appellant.

*Basil W. Kelsey,* of Ottawa, argued the cause, and *Fred M. Harris,* of
Ottawa, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Arn, J.: This is an action to quiet title to seven acres of land
in section 33, township 16, range 19, and to 108 acres of land in sec-
tion 4, township 17, range 19, all in Franklin county, Kansas. All
parties admit that plaintiff, appellant here, is the owner of the 108-
acre tract in section 4 and there is no controversy as to that land.
Contiguous to the 108-acre tract, directly north of it and between it
and the river, is a seven-acre tract lying just across the section line
in section 33. It is this seven-acre tract that is involved in the instant
appeal. Upon a trial in the district court without a jury, judgment
was rendered upon defendants' answer and cross petition quieting
title of the defendants in and to this seven-acre tract of land, and
from that judgment plaintiff appeals.

There is no material dispute as to the facts, and little variance
in the abstracted testimony. The evidence showed the facts to be

as follows: For several years the seven-acre tract in section 33 and the 108-acre tract immediately to the south had been farmed as a unit. There was no fence between the two tracts although they lay in separate adjoining sections. The river looped around the seven-acre tract and some other land in section 33, so that the seven-acre tract lay south of the river and between the river and the 108 acres admittedly owned by appellant.

Prior to the time in controversy, William McBrier had owned the 108-acre tract and the seven-acre tract as well as other adjoining land. He willed the 108-acre tract to his two sons, Amherst and Alphonse McBrier, but died intestate as to the seven-acre tract here in question. Amherst and Alphonse McBrier conveyed the 108-acre tract to the appellant on January 15, 1931, by deed which included an easement to the grantee over a strip of land thirty feet wide along the east side of the seven-acre tract and extended north from the section line to the river. The appellant has no deed to the seven-acre tract, and the appellees are heirs at law of William McBrier who died intestate as to this particular tract. Since appellant acquired the 108-acre tract in 1931, he has also had possession of the seven-acre tract, and from 1931 to 1948 he has farmed it or rented it out to farm tenants. Since 1931 appellant has been in open and notorious possession of the disputed tract. One witness, the local abstractor, testified that appellant discussed this seven-acre tract with him in March or April, 1947, and appellant told him he thought his north line was the river; that appellant also said the first information he had that his title did not include the seven acres in section 33 was when the state highway condemnation proceedings were commenced in March or April of 1947. Appellant never paid taxes on the seven-acre tract. Taxes were paid by appellees until 1938 and after that the records show they were paid by a third party who owns some other adjoining land not involved here.

The evidence before the trial court, and brought to the attention of this court, may be summed up by saying that this appellant thought his land extended to the river and included this seven-acre tract, although his deed from the McBriers in 1931 covered only the 108 acres; that appellant held this seven-acre tract openly and notoriously as his own for fifteen years without being challenged or molested by the record owners under the mistaken belief that it was his land; that not until this action was filed did appellant deny the record owners' title.

Appellant contends that his actual possession for fifteen years constitutes adverse possession so that he should be decreed the legal owner of the seven-acre tract. Some jurisdictions hold that title by adverse possession can be acquired where the occupancy was taken and continued under a mistake as to the true property line. Appellant states in his brief that this should be the law in Kansas, regardless of the holding in *Craig v. Paulk,* 162 Kan. 280, 176 P. 2d 529, which he cites. In that case, this court recognized the different rule followed in some other jurisdictions, and said:

"A different view has been taken in this state. It has been held in a series of cases that title to a boundary strip cannot be established by adverse possession where the possessor occupies the boundary strip simply upon a mistaken belief that a fence or other line constitutes the true boundary line. In *Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836, the rule was stated as follows: 'Where a fence is believed to be the true boundary and the claim of ownership is up to the fence as located, *if the intent to claim title exists only on condition that the fence is on the true line* the intention is not absolute, but conditional, and *the possession is not adverse.* (*Scott v. Williams,* 74 Kan. 448.) If, however, in such a case there is a clear intention to claim the land up to the fence, *whether it be the correct boundary, or not,* the possession will be held adverse.' (Italics supplied; syl. ¶ 3.)" (p. 284.)

Many other decisions of this court have settled the proposition that mistaken and unintentional possession in opposition to the true title holder, continued over a long period of time through ignorance and inadvertence, will not constitute such adverse possession as will ripen into title by prescription. (*Simpson v. Goering,* 161 Kan. 558, 170 P. 2d 831; *Steinbruck v. Babb,* 148 Kan. 668, 84 P. 2d 907; *Park Construction R. & S. Corp. v. Emmett,* 145 Kan. 604, 66 P. 2d 379; *Wiburg v. Stevenson,* 134 Kan. 530, 7 P. 2d 512; *Howell v. Kelly,* 129 Kan. 543, 545, 283 Pac. 500; *Fuller v. Stone,* 116 Kan. 299, 300, 226 Pac. 778; *Kinne v. Waggoner,* 108 Kan. 814, 197 Pac. 195; *Hinnen v. Artz,* 99 Kan. 579, 163, Pac. 141; *Shanks v. Williams,* 93 Kan. 573, 144 Pac. 1007; *Scott v. Williams,* 74 Kan. 448, 451, 87 Pac. 550; *Mathis v. Strunk,* 73 Kan. 595, 596, 85 Pac. 590; *Shanline v. Wiltsie,* 70 Kan. 177, 182, 78 Pac. 436; *Winn v. Abeles,* 35 Kan. 85, 88, 10 Pac. 443.)

In *Steinbruck v. Babb,* supra, it was said:

"It will thus be observed that mistaken belief with an absolute claim of title may make the possession adverse, but that claim of title must be absolute and not conditional, and the true owner must have notice of the hostile intent. The findings in the case at bar contain none of these elements except possession and mistaken belief." (p. 673.)

. In the instant case we think the trial court was compelled to make the findings there made, because *adverse possession,* as defined in the many Kansas cases herein cited, had not been established. The burden of proving adverse possession was upon plaintiff (appellant), who was relying upon it as the basis of his title. He was burdened with the responsibility of overcoming the presumptions against him, to wit: (*a*) That the possession is in subordination to the true title; and (*b*) where one enters into possession under a deed, it is presumed that he claims only the title given him by his deed and that his possession is restricted to the premises granted. (*Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836, syl. ¶ 2.)

It was also held in *Finn v. Alexander,* 102 Kan. 607, 171 Pac. 602, that the failure to pay taxes, while not a controlling circumstance, weakens a claim of ownership by adverse possession.

A further review of the evidence is not necessary. It has been examined and we find no cause to disturb the findings of the trial court as set forth in the journal entry of judgment. Those findings nullify the appellant's claim of title by adverse possession for the reasons herein expressed.

Accordingly, the judgment is affirmed.